IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARJORIE BRUMFIELD-MOUDGIL,

    Plaintiff,

  v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.
                                   /

No. C 05-03989 WHA

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this social-security appeal, the Court finds that the administrative law judge properly considered all medical opinions in his findings. The Court further finds that the ALJ properly addressed the issue of plaintiff's subjective complaints. Accordingly, plaintiff's motion for summary judgment is **DENIED** and defendant's cross-motion for summary judgment is **GRANTED**.

## STATEMENT

**1. PROCEDURAL HISTORY.**

On August 7, 2002, plaintiff Marjorie Brumfield-Moudgil applied for Disability Insurance Benefits and Supplemental Security Income, alleging that she was unable to work due to diabetes, spinal arthritis, vertigo, gallbladder removal, and wrist surgeries (AR 93–96, 362–64, 367). Plaintiff was 56 years old at the alleged onset date (AR 93). The applications

were denied initially and on reconsideration (AR 68–71, 73–77, 367–70). Plaintiff then requested an administrative hearing, which was held before ALJ Brenton L. Rogozen (AR 80).

The ALJ rendered a decision on July 27, 2004, finding that plaintiff was not disabled (AR 15–21). Plaintiff then requested administrative review (AR 11). On August 8, 2005, the Appeals Council denied her request. Plaintiff filed an action before this Court, seeking judicial review pursuant to 42 U.S.C. 405(g). The parties now make cross-motions for summary judgment.

### 2. THE ADMINISTRATIVE HEARING.

At the hearing before the ALJ, plaintiff testified that she had completed high school and one-and-a-half years of college (AR 31). Prior to the alleged onset of her disability, plaintiff explained that she worked in secretarial support for IBM and as an assembly specialist for a security company (AR 31–32). Plaintiff stated that she had not returned to work since her gallbladder surgery in 2001 because of depression brought on by financial problems and a death in her family (AR 32–33). Plaintiff noted mood swings, crying spells and problems with concentration and memory as symptoms of her depression (AR 35).

Plaintiff stated that during a typical day she takes a bath, gets dressed, watches TV, and prepares food (AR 45). She also attends church weekly and makes trips to the grocery store three or four times a week (AR 36, 45). She noted that these outings made her feel uncomfortable and that people "stressed her" (*ibid*.).

### 3. MEDICAL EVIDENCE.

The medical evidence was summarized in the ALJ's decision (AR 17–20). In brief, Neeraj Kochhar, M.D., began treating plaintiff on March 10, 2003, for general medical care, hypertension, diabetes mellitus, hyperlipidemia, depression, anxiety, degenerative disc disease, osteoporosis and chronic-pain syndrome (AR 272). On July 21, 2003, Dr. Kochhar completed a Multiple Impairments Questionnaire in which he opined that the claimant could not perform competitive work based on laboratory findings, a lumbar MRI and a clinical examination (AR 272–79). On April 20, 2004, Dr. Kochhar completed a second Multiple Impairments Questionnaire and reached the same conclusion (AR 353–61).

Les Kalman, M.D., Psy.D., performed an independent psychiatric evaluation of plaintiff on February 29, 2004. Dr. Kalman diagnosed "depressive disorder not otherwise specified" and an adjustment disorder, finding plaintiff's functional limitations were mild, imposing some moderate limitations in the ability to understand and remember detailed instructions and in the ability to maintain attention and concentration for extended periods (AR 345–52). Dr. Kalman assessed a Global Assessment of Functioning ("GAF") of 55 (AR 345).

Ashley Cohen, Ph.D., performed a consultative examination of the plaintiff on November 4, 2003. Dr. Cohen diagnosed a cognitive disorder, an adjustment disorder, borderline intellectual functioning, and prescription dependence (AR 299–302). Dr. Cohen, also assessing a GAF of 55, found that plaintiff had some cognitive weaknesses and memory problems that could limit her ability to perform competitive work (*ibid.*). Dr. Cohen, however, determined that plaintiff could perform simple repetitive tasks (*ibid.*).

**ANALYSIS**

**1.   LEGAL STANDARD.**

The Commissioner's decision must be upheld if it is supported by substantial evidence and free of legal error. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "more than a scintilla" but "less than a preponderance." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). This means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." A court must "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion." *Andrews*, 53 F.3d at 1039. If the evidence "is susceptible to more than one rational interpretation," then the ALJ's decision must be upheld. *Id.* at 1040.

A claimant has the burden of proving disability. Disability claims are evaluated using a five-step inquiry. 20 C.F.R. 404.1520. In the first four steps, the ALJ must determine: (1) whether the claimant is working, (2) the medical severity and duration of the claimant's impairment, (3) whether the disability meets any of those listed in Appendix 1, Subpart P, Regulations No. 4, (4) whether the claimant is capable of performing his or her previous job and (5) whether the claimant is capable of making an adjustment to other work. 20 C.F.R.

3

1 404.1520(a)(4)(i)-(v). In step five, "the burden shifts to the Secretary to show that the claimant can engage in other types of substantial gainful work that exists in the national economy." *Andrews*, 53 F.3d at 1040. The use of the Medical-Vocational Guidelines, or "grids," at step five is proper "where they completely and accurately represent a claimant's limitations" and the claimant can "perform the full range of jobs in a given category." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). Although "the fact that a non-exertional limitation is alleged does not automatically preclude applications of the grids," the ALJ must first determine whether the "claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations." *Id*. at 1102.

### 2. THE ALJ'S FIVE-STEP ANALYSIS.

At step one of the analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability (AR 16). Next, the ALJ found that the claimant's hypertension, hyperlipidemia, osteoporosis, anxiety and chronic back pain were not "severe," but that her mild arthritis and mild depression impairments did qualify as "severe" (AR 17). At step three, however, the ALJ found that none of plaintiff's impairments, considered separately or cumulatively, met or equaled any of the impairments listed in the Social Security regulations (*ibid*.). In step four, the ALJ found that plaintiff had the residual functional capacity to "perform medium work and simple repetitive tasks" (AR 20). The ALJ thereby concluded that plaintiff would not be able to return to her past work (AR 19).

Finally, the ALJ conducted the fifth step of the analysis and applied the grids. The ALJ determined that plaintiff had the exertional capacity to perform medium, light and sedentary work (AR 20). The ALJ also found that plaintiff's capacity to perform medium work was "somewhat diminished by limitations in mental functioning to simple repetitive tasks," but that this limitation was not significant. Given the large number of unskilled jobs available in the medium, light and sedentary levels, the number of jobs this limitation would exclude was insignificant (*ibid*.). Finding that the occupational base was not substantially limited, the ALJ concluded that there were jobs existing in significant numbers in the national economy which plaintiff was able to perform (*ibid*.).

4

Plaintiff contends that the ALJ did not properly consider the medical opinions of Dr. Kochhar, Dr. Kalman, and Dr. Dusay (Br. 8–10). She further argues that the ALJ improperly found her subjective complaints less than credible, and contends that this led the ALJ to improperly applying the grids by not obtaining a vocational expert to testify as to the effects of her non-exertional limitations (Br. 10–11).

### 3. MEDICAL OPINIONS.

The Ninth Circuit distinguishes among the opinions of three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than a non-examining physician's opinion. An ALJ may only rely on the contradicting opinion of a non-treating doctor over that of a treating physician if specific and legitimate reasons are given. These reasons must be supported by substantial evidence in the record. *Id*. at 830–31.

*First*, plaintiff contends that the ALJ simply ignored the opinion of Dr. Kochhar, the treating physician. This order finds that the ALJ did not simply ignore the opinion of Dr. Kochhar but properly rejected his opinion due to a lack of objective medical evidence. The ALJ specifically states that "the treating physician's opinion is not supported by the substantial evidence of record and is not entitled to controlling weight" (AR 18). "An ALJ may discredit treating physician's opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (internal citation omitted). In the instant case, there is nothing in the record to indicate that claimant underwent any independent psychological testing or examination before the examination conducted by Dr. Cohen. Dr. Kochhar made only passing reference to depression in his Multiple Impairments Questionnaire (AR 272–79). At no time is there indication of any objective testing or clinical findings that would lead Dr. Kochhar to this

1  opinion. This order finds that the ALJ offered specific and legitimate reasons to reject
2  Dr. Kochhar's opinions.

3  *Second*, plaintiff argues that the opinion of Dr. Kalman, the examining psychiatrist, was
4  misrepresented when characterized by the ALJ. Plaintiff cites *Reddick v. Chater*, 157 F.3d 715
5  (9th Cir. 1998), which found that mis-characterization of the record warranted reversal. In
6  *Reddick*, the court found that the ALJ erred in characterizing the record due to considerable
7  evidence in the record that detracted from the ALJ's conclusions. *Id*. at 722–23. In the instant
8  case, the ALJ stated that "Dr. Kalman diagnosed a depressive disorder and an adjustment
9  disorder with a GAF of 55," and that "Dr. Kalman opined that the claimant's limitations in
10 functioning are mostly mild with some moderate limitations in the ability to perform detailed
11 tasks" (AR 18). This corresponds directly with Dr. Kalman's Psychiatric/Psychological
12 Impairment Questionnaire in the record (AR 345–52). Granted, the record is more detailed than
13 the ALJ's characterization, but the ALJ did not mischaracterize the evidence in his summary.

14 Finally, plaintiff argues that the ALJ failed to give any weight to the opinion of
15 Dr. Kalman and ignored the testimony of the medical advisor, Dr. Dusay. Plaintiff contends
16 that Dr. Dusay expressly agreed with the diagnostic functional findings of Dr. Kalman and
17 that the opinion of both Dr. Kalman and Dr. Dusay were inconsistent with the ALJ's
18 functional-capacity finding (Br. 9–10). Plaintiff cites *Gallant v. Heckler*, 753 F.2d 1450, 1456
19 (9th Cir. 1984), which held that an ALJ cannot reach a conclusion by ignoring competent
20 evidence that would support the opposite result. In the instant case, the record shows that in
21 fact the opinions of Dr. Kalman and Dr. Dusay were consistent with the ALJ's ultimate findings
22 and, therefore, support the conclusions.

23 The ALJ stated that "the opinions of the evaluating and examining DDS experts are
24 given the greatest weight" (AR 18). This includes Dr. Dusay and Dr. Cohen, the examining
25 physician for the DDS. Dr. Dusay agreed with the findings of both Dr. Cohen and Dr. Kalman
26 and found that they "basically said the same thing" (AR 49–51). Both Dr. Cohen and
27 Dr. Kalman found plaintiff had a GAF of 55, which Dr. Dusay explained does not usually meet
28 the requirements of the Social Security regulations (AR 49). Dr. Dusay further stated that he

6

1  did not believe that plaintiff met or equaled the requirements (AR 50).  The record clearly

2  shows that the opinions of Dr. Dusay and Dr. Kalman were consistent with both Dr. Cohen and

3  the ALJ's ultimate findings.

### 4. SUBJECTIVE COMPLAINTS.

Plaintiff argues that the ALJ improperly found the subjective complaints to be less than credible.  If the ALJ finds a claimant's testimony to be unreliable as to the severity of his symptoms, "the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).  *Barnhart* goes on to say that if the ALJ's credibility finding is supported by substantial evidence in the record then the finding may not be questioned.  *Id*. at 959.  In the instant case, the ALJ acknowledged that plaintiff had some mild limitations and sadness, but clearly stated that "there is no evidence of an underlying impairment that would be so severe as to limit all work" (AR 19).  The ALJ explained that he was "giving the claimant the greatest benefit of the doubt" (*ibid*.).

Originally, plaintiff applied for disability insurance benefits due to various physical impairments and did not allege depression or any other mental impairments.  Plaintiff now asserts that her "impairments are primarily psychiatric in nature" (Br. 7).  The ALJ pointed to several medical opinions in the record that support his finding of not disabled, including Dr. Cohen's opinion that plaintiff could perform simple repetitive tasks and Dr. Kalman's opinion that the claimant's limitations were mostly mild with some moderate limitations in the ability to perform detailed tasks (AR 18).  The record further shows that despite plaintiff's claims of severe depression, there is no evidence of any psychiatric treatment or testing before commencement of her disability proceedings (AR 47).  This order finds that substantial evidence supports the ALJ's credibility determination as to plaintiff's subjective complaints.

Plaintiff also argues that the ALJ was required to obtain vocational expert testimony as to the impact of the additional mental limitations on the available job base.  The use of the grids, however, is proper "where they completely and accurately represent a claimant's limitations" and the claimant can "perform the full range of jobs in a given category."

7

*Tackett,* 180 F.3d at 1101. Although "the fact that a non-exertional limitation is alleged does not automatically preclude applications of the grids," the ALJ must first determine whether the "claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations." *Id*. at 1102.

In the instant case, the ALJ found that the claimant's non-exertional limitations did not significantly limit the range of work permitted by her exertional limitations (AR 20). As stated, this order finds that the ALJ adequately considered plaintiff's subjective complaints based on proper determination of credibility. This order therefore finds that the ALJ did not need to obtain vocational testimony to properly apply the grids.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is **DENIED** and defendant's cross-motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**

Dated: August 4, 2006.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8